STEVEN F. GRUEL (CSBN 213148)
Attorney at Law

655 Montgomery Street, Suite 1700
San Francisco, California 94122
Telephone Number (415) 989-1253
Fax Number (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for Donald Clyburn

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>Vs.<br><br>DONALD CLYBURN,<br><br>　　　　　Defendant. | No. CR-07-0473-PJH<br><br>DONALD CLYBURN'S<br>SENTENCING MEMORADUM<br><br>Honorable Phyllis J. Hamilton<br><br>Hearing: June 4, 2008 @ 1:30 pm |

　　　Defendant Donald Clyburn by and through his attorney, Steven F. Gruel, hereby

submits SENTENCING MEMORANDUM.

## A. **INTRODUCTION**

　　　Donald Clyburn is scheduled for sentencing on June 4, 2008 at 1:30 p.m.   On February

27, 2008 Mr. Clyburn entered his guilty plea to the single count indictment charging a violation

of Title 18, United States Code, Section 2252(a)(4) (B) --- possession of child pornography.

After numerous discussions, the parties agreed that the facts and evidence in this case resulted in

a final offense level under the advisory United States Sentencing Guidelines of 21 points.  See

February 27, 2008 Plea Agreement. Given that Mr. Clyburn has no criminal history points, the sentencing range correctly calculates to 37 – 46 months imprisonment. Id. The parties' agreement calls for a sentence of 37 months in custody, a $7,500 fine, 5 years of supervised release and a $100.00 special assessment. See Plea Agreement, paragraph 8. At the time of his guilty plea, notwithstanding that the hearing was also originally scheduled to include argument as to whether *exceptional circumstances* existed thereby permitting continued pre-sentence release, Mr. Clyburn withdrew the opportunity to present the reasons for his continued release and agreed to surrender into custody while awaiting sentencing.

The United States Probation Office prepared its draft report (PSR). Both parties submitted written objections to the draft PSR. A "Meet and Confer" occurred at the probation office involving the officer, prosecutor and defense counsel. Significantly, both the prosecution and Mr. Clyburn maintained that their agreed upon final offense level was 21 points. The draft PSR calculated an offense level of 24 points. Additionally, Mr. Clyburn had other objections to the draft PSR, but after the fruitful "Meet and Confer," only a few of those objections remain and are addressed in the final PSR.

The final PSR was disclosed on May 19, 2008. As objected to by both the prosecution and Mr. Clyburn, the PSR continued to calculate a higher final offense level of 24 points (PSR # 18-30) and corresponding sentencing range of 51-63 months. (PSR # 54). However, based upon the entire facts of the case, the probation officer's report concludes with a recommended downward variance of 2 offense levels and a final sentence of 41 months imprisonment and $10,000 fine.

### B.  SUMMARY OF MR. CLYBURN'S SENTENCING MEMORANDUM

Since his July 2007 summons to appear to be arraigned on the indictment, Mr. Clyburn has stridently worked to deal with the personal issues which bring him before the Court for

sentencing. While on pretrial release Mr. Clyburn sought counseling with Dan Doyle of *Sharper Future* and Doctor Robert Zesotarski. (PSR # 45).   No pretrial violations whatsoever were ever reported by Mr. Clyburn's pretrial services officer Betty Kim.

Mr. Clyburn has expressed heartfelt remorse and full acceptance of responsibility in this case. (PSR #15).   It is noteworthy that Mr. Clyburn's conduct case occurred in less than a single year from January 2006 to early December 2006.  Mr. Clyburn has never harmed anyone nor is there any indication that he intended to harm anyone.  For the 8 months after the December 7, 2006 federal search warrant at his home and before the indictment in this case, Mr. Clyburn did not engage in any similar conduct.   As noted in the PSR, it is clear that Mr. Clyburn unfortunately is haunted by deep rooted feelings and emotions stemming from an abusive childhood and the treatment of Mr. Clyburn's mother by his siblings. (PSR # 38-40).

The parties worked hard to resolve this case in a manner that resulted in a sentence that correctly reflected Mr. Clyburn's conduct.  The plea agreement's application of the advisory sentencing guidelines results from the government and defendant's assessment of how the guidelines applied to the evidence of the case.  The agreed upon sentence of 37 months, 5 years supervised release, fine of $7,500 and $100 special assessment is fair and just.

Although the final PSR's sentencing recommendation is only 4 months higher than that agreed upon by the parties, Mr. Clyburn respectfully requests that the Court either adopt the guideline calculation recommended by the parties or, if deeming that the PSR correctly calculates the guidelines, that the downward variance go further than the recommended 41 months.

In fact, Mr. Clyburn understands that the Court, when considering the factors under 18 USC 3553, may impose a sentence less than that agreed upon by the parties.  Clearly, Mr. Clyburn is

constrained by and honors the terms of his plea agreement. Yet, as outlined below, he simply

asks the Court to consider all aspects about him (*i.e.*, Mr. Clyburn's 4 years of military service to

our Country and 24 years of service to our Community as a San Francisco Police Officer) in

deciding the fair and just sentence in this case. (PSR # 49).

### C. **MR. CLYBURN'S REMAINING OBJECTIONS TO THE PSR**

The probation officer prepared a thorough and detailed PSR. The ultimate focus on Mr.

Clyburn's emotional issues and possible alcohol abuse correctly identify the core of reasons why

we are *even present* for sentencing. The surfacing of these emotions and his depression

apparently manifested in this criminal conduct. Apart from this self-destructive behavior, Mr.

Clyburn has led an exemplary life.

Notwithstanding the need to provide a detailed PSR, the defense submits to the Court that

certain sections of the PSR should not be included. While four of the objections have no impact

whatsoever on the advisory guideline calculation, Mr. Clyburn objects to the inclusion of these

matters in the PSR because, long after he leaves this Court, the report follows him in the Bureau

of Prisons (BOP).

### 1. "Self Surrender" versus "Remanded" To Custody – PSR Paragraph 3

The defense understands that the BOP considers a defendant / inmate's *self-surrendering* as

more favorable than being *remanded* by a Court into custody. Common sense, on the other

hand, tells us there is no appreciable difference between the two – "custody" *is* "custody."

Moreover, given the facts of this case where: (a) Mr. Clyburn appeared for arraignment

eight months after the December 7, 2006, search at his home; (b) Mr. Clyburn was never arrested

on the indictment; (c) Mr. Clyburn was released on an unsecured bond and placed on pretrial

release; (d) Mr. Clyburn had no violations while on pretrial release and was obtaining treatment

for his emotional issues; and (e) Mr. Clyburn voluntarily withdrew his opportunity to convince

the Court that he could show the exceptional circumstances to remain on pretrial release after his

guilty plea, the defense respectfully submits that Mr. Clyburn, in essence, *self-surrendered* to begin serving his sentence. The defenses requests that this paragraph be amended to state that Mr. Clyburn self-surrendered into custody.

2. <u>PSR Paragraphs 7 and 8 – Not Related to Mr. Clyburn</u>

Mr. Clyburn respectfully requests that these paragraphs be deleted from the PSR mainly because they describe events that have nothing directly to do with his case in this district. While these two paragraphs may describe the October 2005 genesis and undercover work of the nationwide investigation in New Jersey, Virginia and Florida, they have no direct relevance to Mr. Clyburn's conduct.

If the paragraphs are to remain in the PSR, however, the defense submits that the Court consider that these paragraphs support in showing Mr. Clyburn's limited, isolated and low level involvement in this apparent large scale I.C. E. investigation.

3. <u>PSR Paragraphs 34 through 36 – Events at the Bowling Alley</u>

Mr. Clyburn has never been arrested. Like most of us, he has had contact with the police because of public disputes with other people. For many years Mr. Clyburn and his wife have been avid bowlers. They belong to bowling leagues and enjoy bowling together. Paragraphs 34 through 36 of the PSR involve four scattered incidents dating back 7 years ago and as far back as 15 years ago at their local bowling alley. None of these disputes resulted in Mr. Clyburn being arrested.[1] In fact, as reported in the PSR, one bowling alley event which resulted in handcuffs temporarily being placed on Mr. Clyburn resulted in a successful federal civil rights lawsuit against the Daly City and South San Francisco Police Departments in the Northern District of

---

[1] As an off-duty and then retired police officer, patrons would on occasion confront or approach Mr. Clyburn. At times, this could result in some sort of dispute or incident.

California. (PSR # 34).   That case was before Magistrate Judge James and resulted in a confidential settlement agreement.

   In short, these paragraphs unintentionally cast Mr. Clyburn in a negative light and portray him as a consistent trouble maker always coming to the attention of the police.   If these paragraphs were to remain in the PSR, the BOP would have an incorrect view of Mr. Clyburn.  Mr. Clyburn respectfully requests that these paragraphs be deleted from the PSR.

   4.  <u>PSR Paragraph 46 - Excerpts From Maxine Clyburn's Diary</u>

   On May 22, 2008 Mrs. Clyburn, through defense counsel, submitted to the Court her letter supporting her husband.  She has been at every court appearance.  She plans to keep their marriage intact through this difficult time.

   The limited excerpts from Mrs. Clyburn's diary stating that Don has a temper and stays angry too long again unnecessarily casts a negative light on Mr. Clyburn.  All long term relationships endure "ups and downs" and include mixed feelings about the characteristics of the other partner. Simply put, it seems well beyond the goal and intent of USSG 1B1.4 to include this type of innocuous information – particular where there has been no violence whatsoever in this case.[2]

   5.  <u>The Advisory Guideline Calculation – How to Count the Images</u>

   The guidelines are only advisory.  Here, the one objection directly impacting the guideline calculation concerns the math used in counting the number of images for the guideline offense level.  This case involved 113 videos.  However, all but 8 videos were erased from the computer, leaving just a single image per video.  (PSR 11-12).  The parties looked to what was left on the computer as well as what could be proven in arriving at the level of this enhancement.  It was

---

[2] §1B1.4. <u>Information to be Used in Imposing Sentence (Selecting a Point Within the Guideline Range or Departing from the Guidelines)</u>: In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.

agreed that these single "thumbnails" and other artifacts of videos, rather than the erased videos themselves, presented a possible proof problem for the government and, hence, warranted the lower calculation increasing the offense level by 2 points.  See Plea Agreement, paragraph 7(a).

In short, the quality of the evidence served to apply the enhancement for the number of images in a fashion that supported only a 2 point increase.  Attached as Exhibit 1 is a copy of the government's May 12, 2008 letter to the probation officer further supporting the limited 2 point enhancement for the provable number of images.

### D.   THE SENTENCING FACTORS SUPPORT MR. CLYBURN

The Court shall impose a sentence sufficient, *but not greater than necessary*, to comply with explicit purposes set in Title 18, United States Code, Section 3553(a)(2).(emphasis added).  A sentence achieves just punishment when it reflects the seriousness of the offense, promotes respect for the law, protects the public and provides deterrence to criminal conduct.  In fashioning a "just sentence," the Court is to consider not only the nature and circumstances of the offense, but also the history and characteristics of the defendant.  18 U.S.C. Section 3553(a) (1).

1. Nature and Seriousness of the Offense:

This is a serious crime.  The undisputed facts show, however, that Mr. Clyburn did not engage in this conduct over numerous years or that he ever attempted to harm anyone.  Instead, deeply rooted emotional issues account for his self-inflicted and isolated destructive behavior. With the continued counseling he sought and participated in while on pretrial release, there is nothing to suggest that Mr. Clyburn will ever return to this or any other criminal conduct.

2. History and Characteristics of Donald Clyburn:

Up until this case, Mr. Clyburn has been a law abiding person who is respected and loved by family and friends.  He has no juvenile adjudications or criminal convictions.  He served honorably in the Viet Nam war and returned to the United States to serve and protect as a police

officer.  After 24 years in the San Francisco Police Department, he retired on a medical

disability.

As seen in the PSR with the attached letter of Doctor Martin Liberman, and as the Court will

recall, Mr. Clyburn also suffers from numerous medical conditions.  (PSR 43-44).  These

medical factors should be considered in fashioning an appropriate sentence for this case.

3.  <u>To Promote Respect For The Law:</u>

Nothing before the Court shows any disrespect by Mr. Clyburn to the law.  To the contrary,

Mr. Clyburn strictly adhered to the Court ordered conditions of pretrial release.  For 24 years, as

a police officer he proudly and fairly enforced the law.  He continues in his respect for the law.

4.  <u>Afford Deterrence and Protect the Public:</u>

The Court can be assured that Mr. Clyburn will never appear as a defendant again.  His

expression of remorse, his acceptance of responsibility, his outreach for both mental health and

alcohol treatment displays his commitment to address the issues that led to this prosecution.  At

no time before, during or after Mr. Clyburn was first identified by law enforcement as being

involved in this criminal activity has he ever attempted, or been accused of attempting,  to hurt

anyone.

## E.  **ALCOHOL TREATMENT**

The PSR notes that Mr. Clyburn has "displayed poor judgment while under the influence of

alcohol."  So as to continue to address all possible factors that caused or assisted in his isolated

criminal conduct, Mr. Clyburn requests that he be permitted to participate in any alcohol

treatment program while incarcerated.

## F.  **LETTERS OF SUPPORT**

Several family members and friends have offered their letters of support for the Court's

consideration.   These letters were filed with the Court, the prosecutor and the probation officer

on May 22, 2008. The family asks that the Court consider Mr. Clyburn as they know him.   They

1   describe him as an honest sensitive man who has had his share of life's hardships.  They hope

2   that he will be given leniency at sentencing.

### G. <u>CONCLUSION</u>

4       Mr. Clyburn's emotional issues contributed to his one year of self-destructive criminal

5   conduct.  Yet, through it all he and Maxine have kept their marriage intact.  Mr. Clyburn has

6   taken the necessary steps to address, and will continue to address, the past issues that haunt him.

7   To impose a prison sentence beyond 37 months would run contrary to the parties' agreement and

8   constitute a sentence far greater than necessary.  Mr. Clyburn seeks the Court's leniency in

9   imposing a fair sentence in this case.   The Clyburn's are not wealthy people and request that the

10  fine be $7,500 and not the $10,000 in the PSR.   Mr. Clyburn requests that he have the

11  opportunity to pay any fine after he is released from custody and in manageable installments in

12  lieu of a single payment.

                                    Respectfully Submitted,

14

15  Dated:  June 1, 2008               /s/ Steven F. Gruel_____
                                    STEVEN F. GRUEL
16                                  Attorney for Donald Clyburn

# EXHIBIT   1



U.S. Department of Justice

*United States Attorney*
*Northern District of California*

---

*11th Floor, Federal Building*          *(415) 436-7241*
*450 Golden Gate Avenue, Box 36055*
*San Francisco, California 94102-3495*          *FAX:(415) 436-7234*

May 12, 2008

*Via Hand Delivery*

Jacqueline Sharpe
U.S. Probation Officer
450 Golden Gate Ave., 17th Floor
San Francisco, CA 94102

      Re:    *United States of America v. Donald Clyburn*
            Northern District of California Criminal Case No. CR 07-473 PJH

Dear Ms. Sharpe:

      I write this letter to note the government's objection to the guideline calculation set forth in paragraph 21 of your proposed presentence report regarding the above-referenced defendant. Specifically, I believe a two-level enhancement for the number of images is appropriate, rather than the five-level enhancement that you propose. The three-level difference between our positions is based on whether the 113 thumbnail images of child pornography found on Mr. Clyburn's laptop are treated as images or as videos. You treat the thumbnails as videos, and apply the multiplier for videos, movies, or video-clips at guideline §2G2.2(b)(7).

      I believe the thumbnails should be counted as images, for several reasons. First, the thumbnails themselves are still images, not videos. While they are evidence of videos, and Mr. Clyburn admitted that they were videos are part of his guilty plea, what was actually found on his laptop were a series of images, rather than videos. Second, the thumbnails give no indication of their length. The guidelines suggest that an upward departure may be appropriate for videos longer than five minutes, but provide no guidance for how to deal with videos of uncertain length, or videos that may be extremely short. Given that two videos, under the guidelines multiplier, are sufficient to bump a defendant up by one offense level, I believe that a conservative view of the effect of these thumbnails on Mr. Clyburn's guidelines range is appropriate.

      Third, while the government is confident that it could have proved its case against Mr. Clyburn beyond a reasonable doubt, there are significant proof issues that arise when a case relies on "artifacts" of digital files rather than the digital files themselves. For example, the Ninth Circuit vacated a sentence that was calculated based on files in internet cache in *United States v. Kuchinski*, 469 F.3d 853, 863 (9th Cir. 2006), and held that a defendant cannot be charged with possession of files in internet cache without evidence that he exerted some control over them. In this case, the government would argue that unlike the cache files, the thumbnails

Letter to Jacqueline Sharpe
May 12, 2008
Page 2

show evidence of Mr. Clyburn's exercise of dominion and control, but I merely bring this case to your attention to show the potential proof problems that arise with this type of evidence, and with relying on it in sentencing.

Finally, I believe the 37-month sentence recommended here is consistent with the sentence recently handed down in *United States v. Zelinsky*, N.D. Cal. No. CR 07-0614 JW. In that case, a retired NASA engineer pled guilty to possessing over 600 images of child pornography, including images of prepubescent minors and images of sadistic conduct. About six weeks ago, Judge Ware sentenced Mr. Zelinsky to 36 months in prison. A copy of the press release from that sentencing is attached for your reference.

I have also attached a copy of Mr. Clyburn's rap sheet. I do not have any information about previous arrests.

I hope you will consider these points in preparing your final presentence report for Judge Hamilton. Please let me know if I can provide any further information.

Very truly yours,

JOSEPH P. RUSSONIELLO
United States Attorney

OWEN P. MARTIKAN
Assistant United States Attorney

attachments

cc:    Steven Gruel, Esq. (via fax & mail)